UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division
**Case Number: 10-20611-CIV-MORENO**

ANA MARGARITA MARTINEZ,

    Plaintiff,

vs.

THE REPUBLIC OF CUBA,

    Defendant,

vs.

ABC CHARTERS, INC., AIRLINE BROKERS COMPANY, INC., C & T CHARTERS, INC., CUBA TRAVEL SERVICES, INC., GULFSTREAM AIR CHARTER, INC., MARAZUL CHARTERS, INC., XAEL CHARTERS, INC., and WILSON INTERNATIONAL SERVICES, INC.

    Garnishees.
_____/

## ORDER ON WRITS OF GARNISHMENT

The Court is asked to determine the validity of eight writs of garnishment issued by a Florida state court stemming from a $27 million default judgment obtained by the Plaintiff against the Cuban government in 2001. The Garnishees are South Florida companies that charter flights to Cuba. They removed the state court garnishment action and argue that the writs are invalid for multiple reasons. The Plaintiff, Ana Margarita Martinez, is the ex-wife of Pablo Roque, a Cuban spy. She claims that,

after approximately three years of dating and approximately one year of marriage, Roque abruptly left early one morning in 1996 never to return. She then saw him on a news broadcast speaking from Cuba. She claims he used their brief marriage as a cover for espionage activities on behalf of the Cuban government. She has filed a motion to remand to state court, arguing that this is strictly a Florida garnishment cause of action between Florida residents.

Before analyzing the limited legal issues facing the Court, it is essential that the Court set out at the outset what this case is *not* about. It is *not* about whether there should be travel by American citizens or residents to Communist Cuba. That policy decision is exclusively one for the President of the United States and for Congress. This case is *not* about the wisdom or lack of wisdom of allowing Cuban "political refugees" to return multiple times to the country of oppression from where they fled. Nor is this case an opportunity to approve or disapprove the $27 million state court default judgment entered against Cuba as a result of the personal betrayal by the Plaintiff's husband. This Court has no authority to opine on the wisdom of the amount of compensation awarded by former Florida Circuit Judge Alan Postman.

What this case *is* about is the validity of writs of garnishment that require garnishees to answer whether they are indebted to "the Republic of Cuba or any agency or instrumentality of the Republic of Cuba" and whether this Federal court has jurisdiction to make that determination in the first place. If this Federal court does not have jurisdiction, then the action must be remanded back to Florida state court.

## Background

The Plaintiff obtained a state court judgment against Cuba for $27,175,000 in Miami-Dade County Circuit Court Case No. 99-18208 CA 20. Cuba had not responded to the Complaint and thus the judgment was entered by default. The Plaintiff alleges that she has collected approximately

2

$200,000 of the $27,175,000 judgment. Upon motion by the Plaintiff, the clerk of the state court issued writs of garnishment to ABC Charters, Inc., Airline Brokers Company, Inc., C&T Charters, Inc., Cuba Travel Services, Inc., Gulfstream Air Charter, Inc., Marazul Charters, Inc., Xael Charters, Inc., and Wilson International Services, Inc. (the "Garnishees"). The writs of garnishment charged the Garnishees with answering whether they are indebted to "the Republic of Cuba or any agency or instrumentality of the Republic of Cuba." The Garnishees removed the garnishment action to this Court and moved to dissolve the writs. The Plaintiff moved to remand, alleging that this Court is without jurisdiction.

## Discussion

Historically, foreign states were generally afforded complete immunity from suit in courts in the United States. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486 (1983). Because foreign sovereign immunity is an issue of "grace and comity" by the United States, the Supreme Court consistently deferred to the political branches and, particularly, the State Department, on matters of foreign sovereign immunity.[1] *Id.* This system proved to be unfeasible, however, because the State Department's decisions were sometimes influenced by diplomatic pressures. In addition, in some instances the foreign states failed to request immunity from the State Department, requiring the courts to make their own determinations based on prior State Department decisions. *Id.* In an effort to free the government from diplomatic pressures and to create a uniform set of standards for making foreign immunity determinations, Congress enacted the Foreign Sovereign Immunity Act ("FSIA") in 1976, 28 U.S.C. §§ 1330, 1441(d), 1602-1611. *Id.* at 488.

---

[1] The United States has filed briefs addressing how the Court's decision impacts the foreign policy interests of the United States government. The Court cannot consider these policy arguments in making its legal decision but, because of the United States' interest, the Court has ruled as expeditiously as possible.

3

The FSIA generally provides that foreign states are immune from suit in state and federal courts unless an exception in 28 U.S.C. §§ 1605, 1605A, or 1607 applies. It also provides that foreign states and their instrumentalities are immune from having their property within the United States attached unless an exception in 28 U.S.C. § 1610 applies. But satisfying a FSIA exception is not simply a precondition for suing or attaching the property of a foreign state; it is a precondition for establishing subject matter jurisdiction over an action against a foreign state. *See Verlinden*, 461 U.S. at 493-94 ("The [FSIA] must be applied by the District Courts in every action against a foreign sovereign, since subject matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity.").

Before the Court decides whether it has jurisdiction under the FSIA, it must first satisfy itself that removal by the Garnishees was proper. As a basic principle, the Court must strictly construe the requirements of 28 U.S.C. §1441 and remand all cases in which such jurisdiction is doubtful. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). The removal statutes are construed narrowly, and when the parties clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Moreover, in enacting the FSIA, Congress did not intend that all cases against a foreign state be in federal court; it merely gave foreign states the right to decide. The Supreme Court has made this clear. In *Verlinden*, the Court noted,

> The Act expressly provides that its standards control in "the courts of the United States and of the States," *id.* § 1604, and thus clearly contemplates that such suits may be brought in either federal or state courts. However, "[i]n view of the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area," H.R.Rep. No. 94-1487, at 32, the Act guarantees foreign states the right to remove any civil action from a state court to a federal court, *id.* § 1441(d).

*Verlinden*, 461 U.S. at 489. 28 U.S.C. § 1441(d), which was added by the FSIA, provides,

> Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury.

28 U.S.C. § 1441(d). The question, then, is whether the Garnishees were permitted to remove this action.

The Garnishees argue that they properly removed the action pursuant to 28 U.S.C. § 1441(b), which provides the right to remove to federal court "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States ...." The Garnishees then argue that this Court has original jurisdiction pursuant to (1) 28 U.S.C. § 1330, which confers original jurisdiction over "any nonjury civil action against a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title ...," and (2) 28 U.S.C. § 1331, which confers original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."

The Plaintiff counters that 28 U.S.C. § 1441(d) is the exclusive basis for removal in this case and, because it discusses only a foreign state's[2] right to remove, the Garnishees were not permitted to remove this action. The Court agrees.

First, as the Plaintiff points out, if § 1441(d) were not the sole avenue for removal in actions against foreign states, § 1441(d) would be superfluous. If, as the Garnishees argue, the mere fact that

---

[2] The Garnishees admit that this is an action against a foreign state. The Court agrees. Although this action is technically against the Garnishees (Florida residents), it is against a foreign state in the sense that it seeks to attach the assets of a foreign state. The Florida statutory garnishment scheme confirms this finding. It expressly requires the plaintiff to serve the writ of garnishment and the garnishee's answer on the defendant, § 77.055, Fla. Stat. (2000), and permits the defendant to move to dissolve the writ within a specific time period or risk being in default, § 77.07, Fla. Stat. (2005).

5

an action is against a foreign state supports federal question jurisdiction under 28 U.S.C. § 1331, there would be no need for § 1441(d) because removal would always be available under 28 U.S.C. § 1441(a) and (b). The Court cannot interpret § 1441(d) as mere surplusage. *See TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted). The only logical construction is that Congress intended that § 1441(d) be the exclusive basis for removal in actions against foreign states. The Supreme Court agrees. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 473 (2003) ("Title 28 U.S.C. § 1441(d) governs removal of actions against foreign states.").

Further support for this construction comes from the fact that the FSIA is the exclusive basis for jurisdiction over cases against foreign states. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) ("We think that the text and structure of the FSIA demonstrate Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state in our courts."). In addition, a majority of the Federal Circuits (including the Eleventh Circuit) have interpreted the FSIA as having created three mutually exclusive bases for federal jurisdiction: (1) actions arising under federal law; (2) actions based on diversity of citizenship; and (3) actions against foreign states. *See Ruggiero v. Compania Peruana De Vapores*, 639 F.2d 872 (2d Cir. 1981). In *Ruggiero*, the plaintiffs attempted to circumvent 28 U.S.C. § 1330's and 28 U.S.C. § 1441(d)'s jury trial prohibitions in actions against foreign states by arguing that an independent basis for jurisdiction (that did not expressly prohibit jury trials) existed: diversity jurisdiction under 28 U.S.C. § 1332. Rejecting that argument, the Second Circuit said, "Congress wished to provide a single vehicle for actions against foreign states or entities controlled by them, to wit, s 1330 and s 1441(d), its equivalent on removal, and to bar jury trial in each." *Id.* at 878. The court also directly addressed

whether a plaintiff suing a foreign state could circumvent the jury trial prohibition by claiming federal question jurisdiction (28 U.S.C. § 1331). Rejecting that attempt, the court said,

> We can think of no reason why Congress would wish a plaintiff suing a foreign state on a claim arising under the Constitution, a law or a treaty of the United States to have a jury trial whereas a person suing on a non-statutory claim would not. If any distinction were to be made, it would run the other way. The courts must learn to accept that, in place of the familiar dichotomy of federal question and diversity jurisdiction, the Immunities Act has created a tripartite division-federal question cases, diversity cases and actions against foreign states. If a case falls within the third division, there is to be no jury trial even if it might also come within one of the other two.

*Ruggiero,* 639 F.2d at 876. The court thus expressly held that a party cannot rely upon federal question or diversity jurisdiction in an action against a foreign state.[3]

The Garnishees must accordingly rely on the FSIA. But the FSIA's removal provision, which must be construed narrowly, allows only a foreign state to remove an action. *See* 28 U.S.C. § 1441(d) ("Any civil action brought in a State court against a foreign state ... may be removed by the foreign state ...."). The Garnishees' removal was therefore improper. The result would be different, of course, had Cuba appeared and removed the action. But it did not. Accordingly, this action must be remanded.

Because this action was not properly removed, this Court is without the authority to determine the following: (1) whether a 28 U.S.C. § 1610 exception is satisfied; (2) whether the Plaintiff needs a license from the Office of Foreign Assets Control; and (3) whether the writs of garnishment are facially invalid for requiring the Garnishees to answer whether they are indebted to

---

[3] The Eleventh Circuit Court of Appeals and other Federal Circuits have affirmed this construction. *See Arango v. Guzman Travel Advisors,* 761 F.2d 1527, 1532-33 (11th Cir. 1985); *see also Riedel v. Bancam,* 792 F.2d 587, 590-91 (6th Cir. 1986); *Berkovitz v. Islamic Republic of Iran,* 735 F.2d 329, 331 (9th Cir. 1984); *Goar v. Peruana de Vapores,* 688 F.2d 417, 428 (5th Cir. 1982); *Williams v. Shipping Corp. of India,* 653 F.2d 875, 880-81 (4th Cir. 1981).

an agency or instrumentality of Cuba notwithstanding the fact that the Plaintiff's judgment is against Cuba only.[4] These issues must be decided by the Florida court.

### Conclusion

For the reasons stated above, it is ORDERED AND ADJUDGED that

(1) The Motion to Remand (D.E. No. 16) is GRANTED. This case is hereby REMANDED to the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The Clerk of the Court is hereby directed to take all necessary steps and procedures to effect the expeditious remand of the above-styled action.

(2) The Motion to Dissolve the Writs of Garnishment (D.E. No. 8) is DENIED with leave to refile in the Florida court, where the judgment was entered.

(3) This case is CLOSED and all other pending motions are DENIED as moot with leave to refile in the Florida court if appropriate.

DONE AND ORDERED in Chambers at Miami, Florida, this 28th day of April, 2010.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to Counsel of Record

---

[4] *See Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc.*, 183 F.3d 1277, 1286 (11th Cir. 1999) (citing *Live Supply, Inc. v. C&S Plumbing, Inc.*, 402 So. 2d 505, 506-07 (Fla. 4th DCA 1981)).